COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                          Superior Court
                                                        No.

ORANGE COUNTY PLASTIC
SURGERY MEDICAL
ASSOCIATES, INC. and
JURIS BUNKIS
    Plaintiffs

v.

CYNOSURE, LLC
    Defendant

## COMPLAINT AND JURY DEMAND

1. Plaintiff, Orange County Plastic Surgery Medical Associates, Inc. ("OCPSMA") is a professional medical corporation incorporated and existing under the laws of the State of California, with a principal place of business located at 4501 Birch St, Suite B, Newport Beach, CA.

2. Plaintiff, Juris Bunkis is an individual residing in Clinton, Massachusetts, and President of OCPSMA.

3. On information and belief, defendant, Cynosure. LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 5 Carlisle Road, Westford, Massachusetts.

## ALLEGATIONS COMMON TO ALL COUNTS

4. On information and belief, Cynosure, LLC is the successor in interest to all obligations and liabilities of Cynosure, Inc.

5. Cynosure, LLC or its predecessor in interest, Cynosure, Inc. (collectively, "Cynosure") manufactured and sold a device known as the SculpSure Non- Invasive Contouring Platform ("SculpSure").

6. In or about 2015, Cynosure began marketing and selling the SculpSure to physicians, practices, and medical spas. The SculpSure was marketed as an effective way to reduce fat in a patient by use of laser technology.

7. Cynosure aggressively campaigned to induce OCPSMA to purchase the SculpSure device at a cost of $220,750, plus applicable taxes, additional costs, support, and materials costs, if any.

8. During the course of its aggressive sales campaign, Cynosure made multiple material misrepresentations to the plaintiffs regarding the key attributes of the SculpSure device, including but not limited to the following:

    A) That only one simple 25-minute treatment would achieve significant fat loss;
    B) That SculpSure is virtually painless and easily administered and tolerated without pain medication;
    C) That the procedure could be performed "hands free" without a physician or trained staff member being present during the majority of the treatment;
    D) That the SculpSure uses a painless (or minimally painless) procedure using heat/laser therapy to melt fat in the human body;
    E) That the SculpSure usually requires only one use or treatment for each patient in order to accomplish the melting or reduction of fat in any particular area of the body;
    F) That the SculpSure was usable in different areas of the body and might require only another use of the procedure for any patient if the goal is to reduce fat in a different area of the body;
    G) That the SculpSure machine was safe for use on patients for the purposes mentioned above;
    H) That use of the machine would result in a significant increase in the plaintiffs' medical practice income; and,
    I) That Cynosure would provide referrals of multiple patients per month.

9. In or about November of 2017, as a result of reasonable reliance by the plaintiffs on the misrepresentations of the defendant, OCPSMA was induced to enter into a "Customer Purchase Agreement" and related agreements.

10. The defendant required OCPSMA to purchase and finance the SculpSure through a "Conditional Sales Agreement" with Ascentium Capital LLC "(Ascentium")".

11. Bunkis personally guaranteed the Conditional Sales Agreement.

12. The various contract documents used by Cross-Defendants to accomplish this scheme included oral and written understandings and agreements, including but not limited to those attached hereto as Exhibit "A" (collectively, the "Contract").

13. After OCPSMA purchased and installed the SculpSure machine, it became apparent that the SculpSure device was defective and would not fulfill the promises made by the defendant, and that Cynosure's representations to induce purchase of the defective SculpSure machine had been false.

14. The plaintiffs promptly notified Cynosure that the SculpSure machine was defective in the manners set forth above. Cynosure refused to accept return of the device and credit plaintiffs for the amounts paid.

15. Ascentium repossessed the SculpSure machine, in or about September of 2020.

16. To date, the plaintiffs have paid more than $131,000 for the SculpSure machine, plus related costs.

17. Cynosure continues to refuse to credit the plaintiffs for amounts paid or for the return of the SculpSure machine.

## COUNT I – FRAUD

18. The plaintiffs reassert the allegations in paragraphs 1 through 17 of the complaint as though fully set forth herein.

19. Cynosure's falsely represented that the machine would achieve certain results for patients; that Cysnosure would refer new clients to OCPSMA; that Cynosure would advertise on behalf of OCPSMA; and that Cynosure would assist OCPSMA to grow its business.

20. Cynosure knew that its representations were false when it made them.

21. Cynosure had no intention of keeping the promises that it made to the plaintiffs.

22. Cynosure intended that the plaintiffs rely on its representations.

23. OCPSMA and Bunkis had no way to determine that the representations were false.

24. OCPSMA was induced to enter into the Customer Purchase Agreement and purchase the SculpSure from Cynosure, and to finance the purchase through Ascentium's Conditional Sales Agreement by Cynosure's false representations.

25. Bunkis was induced to sign a personal guaranty of the Conditional Sales Agreement by the same representations.

26. As a result of Cynosure's false representations, the plaintiffs have paid more than $131,000 and related costs.

WHEREFORE, the plaintiffs demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

## COUNT II - BREACH OF CONTRACT

27. The plaintiffs reassert the allegations in paragraphs 1 through 26 of the complaint as though fully set forth herein.

28. The Contract includes warranties and promises from Cynosure that the SculpSure machine would fulfill all of the promises made to plaintiffs. However, the SculpSure machine does not fulfill the intended purpose. Thus, Cynosure has breached the Contract and such breaches have not been excused.

29. Plaintiffs have performed their obligations under the Contract.

30. As a direct and proximate result of the Cross-Defendants' wrongful conduct as herein alleged, Cross-Complainants have incurred damages and are entitled to general and consequential damages in an amount to be proven at trial.

    WHEREFORE, the plaintiffs demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31. The plaintiffs reassert the allegations in paragraphs 1 through 30 of the complaint as though fully set forth herein.

32. Cynosure had an implied obligation to deal honestly and in good faith in both the performance and enforcement of the terms of the contract.

33. Cynosure's conduct has breached the implied duty of good faith and fair dealing.

34. As a direct and proximate result of the Cross-Defendants' wrongful conduct as herein alleged, Cross-Complainants have incurred damages and are entitled to general and consequential damages in an amount to be proven at trial.

    WHEREFORE, the plaintiffs demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

## COUNT III - UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

35. The plaintiffs reassert the allegations in paragraphs 1 through 34 of the complaint as though fully set forth herein.

36. As a direct and proximate result of the acts and transactions alleged herein, the defendant has been unjustly enriched and has obtained money or other consideration to which the defendant is not otherwise entitled.

37. The defendant holds such sums as an involuntary trustee, in constructive trust tor the plaintiffs with a duty to reconvey the same to the plaintiffs.

38. The plaintiffs are entitled to the return of all sums paid to the defendant.

   WHEREFORE, the plaintiffs demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

## COUNT IV – INJUNCTIVE RELIEF

39. The plaintiffs reassert the allegations in paragraphs 1 through 38 of the complaint as though fully set forth herein.

40. As a result of the defendant's action, the plaintiff has suffered, and will continue to suffer, irreparable harm.

WHEREFORE, the plaintiffs pray this Court for an injunction requiring the defendant to account for all monies received from the plaintiffs, whether directly or through Ascentium, and to return all of said monies.

## COUNT V – RECISSION

41. The plaintiffs reassert the allegations in paragraphs 1 through 40 of the complaint as though fully set forth herein.

42. The plaintiffs were induced to enter into the Contract by the defendant's fraudulent representations.

43. Bunkis was induced to personally guarantee the Conditional Sale Agreement by the defendant's fraudulent representations.

44. The plaintiffs have restored the SculpSure to the defendant.

45. The plaintiffs are entitled to rescission of the Contract and restoration of all sums paid to the defendant.

   WHEREFORE, the plaintiffs ask that the Court rescind the Conditional Sales Agreement demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

## COUNT VI – NEGLIGENT MISREPRESENTATION

46. The plaintiffs reassert the allegations in paragraphs 1 through 45 of the complaint as though fully set forth herein.

47. In the course of its business, Cynosure supplied false information to the plaintiffs for guidance in their business transactions.

48. Cynosure failed to use reasonable care or competence in obtaining or communicating such information.

49. The plaintiffs justifiably relied on the information supplied by Cynosure.

50. As a result of their reliance on the information supplied by Cynosure, the plaintiffs suffered monetary losses.

WHEREFORE, the plaintiffs demand the return of all sums paid, together with interest and costs, and such other relief as this Court deems proper.

*/s/ Thomas B. Farrey, III*
THOMAS B. FARREY, III/#159880
MARGARET R. SUUBERG/BBO#544588
Burns & Farrey, P.C.
2 South Bolton Street
Marlborough, MA   01752
T:  (508) 756-6288
E:  farrey@burnsandfarrey.com
    suuberg@burnsandfarrey.com

Dated:  October 14, 2022

4883-7540-5109, v. 1

# EXHIBIT "A"

**CYNOSURE**    8888

srview ocps.com
crystalDocps.com
bunkersDocps.com    joDocps.com

5 Carlisle Rd, Westford, MA 01886
Telephone: 978-256-4200    Fax: 978-349-7443

Date:

## Customer Purchase Agreement

### CUSTOMER INFORMATION

Customer Name: Dr. Juris Bunkis
Contact Person: Crystal
Address: 4501 Birch St. Ste. B
City/State/Zip: Newport Beach, CA 92660
Telephone/Fax: (949) 888-9700

Ultimate Ship To: SAME

Telephone/Fax:

| PRODUCT DESCRIPTION | QTY | Unit Price (in USD) | Total Price (in USD) |
|---|---|---|---|
| **SCULPSURE® NON-INVASIVE BODY CONTOURING PLATFORM**<br>1060nm wavelength, 240W maximum power. Complete with on-site installation & 2 day clinical in-service, and one (1) year equipment warranty. System includes:<br>• 4 ea Laser Diode Applicators<br>• 1 Body wearables kit with attachment frames & belts<br>• Photo Positioning Mat and Backdrop<br>• 2 Bottles Lux Lotion<br>• 1 Patented Applicator for Contouring (PAC) key with 50 body PACs for clinical training<br>• Two Component Pager System (transmitter & pager) for non-emergency patient communication to the treatment staff<br>Freight | 1 | $220,750 | $220,750 |
| **Patented Applicator for Contouring (PAC) Treatments**<br>• 1 Body PAC Key with 100 PACs | | | |
| PAC Key Discount | | | |
| **SCULPSURE® SUBMENTAL PACKAGE**<br>• Water modulator hardware and system software to expand heat threshold for submental indication<br>• 1 Submental wearables kit with headgear, attachment frames, and belts<br>• 1 PAC key with 10 submental PACs for clinical training | | | |
| **Patented Applicator for Contouring (PAC) Treatments**<br>• 1 Submental PAC Key with 50 PACs | | | |
| PAC Key Discount | | | |
| **Marketing Package:** Printed and electronic marketing material support including: product brochures, print-ready files, web and media files, before and after photos. | | | |
| * Commencing 120 calendar days from the SculpSure clinical in-service date, a minimum purchase of 2 PAC Key per 90 days thereafter will need to be maintained along with compliance with Cynosure's Minimum Advertised Pricing (MAP) Policy in order to qualify for the discounted pricing ($3500 for body PAC Keys & $3750 for submental PAC KEYs). | | | |
| Quoted Price Valid for 30 days from above date. Prices do not include sales, duty or excise taxes, including medical device excise taxes which are the responsibility of the Customer to pay and will be billed separately. | | | $ 220,750.00 |

Handwritten notes: -$20,000 marketing budget; -$10,000 Patent pop package

### ACCEPTANCE OF AGREEMENT

By signing below, the Customer (i) is representing to Cynosure, Inc. ("Cynosure") that it has the requisite corporate authority to execute and deliver this Customer Purchase Agreement ("Agreement") and has the required licensing from the applicable state medical review board to operate the Product purchased by this Agreement, and (ii) is entering into a binding agreement for the purchase of the Product and/or services described above and accepts all of the terms and conditions as stated in this document (including the following page(s)), and (iii) hereby acknowledges receipt and understands the content of the Cynosure Minimum Advertised Price Policy. This Agreement is subject to Cynosure's terms and conditions of sale contained or referred to herein and the Customer expressly disclaims any additional and/or different terms and conditions or any terms and conditions on the Customer's purchase order. Federal law restricts the sale of the products to a licensed practitioner.

Customer Signature (Authorized Representative)    Date

Cynosure Area Sales Manager Signature    Date

Delivery Date:

934-SM03-004, Rev. E

Cynosure, Inc.
5 Carlisle Rd
Westford, MA 01886
T: 800-886-2966
F: 978-349-7443

Terms
Prices are FCA, Westford, MA Incoterms 2000 in U.S. dollars
Payment Terms: 15% non-refundable deposit required with purchase order.
   Balance due net 30 days with prior credit approval. (VISA/Mastercharge/American Express accepted.)
   Payment is not contingent upon installation and/or acceptance.
   1.5% interest due monthly on overdue balances.
**All Sales are final. Cynosure Grants no right of return.**

*Due to continuing improvements, prices and specifications are subject to change without notice.*

*Cynosure reserves and the Customer grants to us, a security interest in all Products sold and all proceeds to secure the full payment.*

**Warranty Information**

**Return Goods Authorization Service**
Product, damaged or otherwise, will not be accepted by return shipments without prior approval from Cynosure's Customer Service Department. Authorization for return is at the sole discretion of Cynosure. All returned Product must be accompanied by a RETURN MATERIALS AUTHORIZATION number issued by Cynosure.

**SculpSure® Workstation Warranty**
Cynosure warrants to the original purchaser of the Product, including applicators, that the Product is free from defects in materials and workmanship, under normal use and service, for a period of twelve (12) months from the date of shipment ("SculpSure Product Warranty"). Product consumables and accessories such as water filters, attachment frames, belts, and headgear are warranted for a period of thirty (30) days from the date of shipment. Replacement parts other than the items stated above that are purchased outside of this SculpSure Product Warranty are warranted for a period of thirty (30) days from the date of shipment.

**PAC Key Warranty**
The warranty period for the PAC Key for use with the Product shall be for the useful life of the individual key (i.e., the remaining number of PAC treatment applications), which period shall begin on the date Cynosure ships the applicable PAC Keys to Customer (the "PAC Key Warranty Period"). Cynosure warrants to Customer during the PAC Key Warranty Period that the applicable PAC Keys will be free from defects in materials and workmanship and will substantially conform to Cynosure's written specifications applicable to the PAC Keys as such specifications exist on the date of shipment.

Cynosure is an Equal Opportunity Employer.

THE OBLIGATIONS OF CYNOSURE UNDER THIS WARRANTY ARE LIMITED, IN ITS EXCLUSIVE OPTION, TO REPAIR OR REPLACE PARTS AND MATERIALS WHICH PROVE TO BE DEFECTIVE.

These Warranties are null and void a) where the Product is unpacked, installed, serviced, and/or repaired by person(s) other than an authorized Cynosure service representative; b) where service is required due to the Customer's failure to operate or maintain the Product in an manner consistent with the specifications and guidelines set forth in the Product's operator manual; and/or c) where service is required due to attempted or actual dismantling, disassembling, alteration, and/or modification of the Product by person(s) other than an authorized Cynosure service representative.

Additional services, including, but not limited to telephone support, repair, maintenance, and refurbishment of equipment, may be purchased.

THE FOREGOING WARRANTIES ARE THE SOLE AND EXCLUSIVE WARRANTY OBLIGATIONS OF CYNOSURE, AND THE REMEDY PROVIDED ABOVE IS IN LIEU OF ANY AND ALL OTHER REMEDIES. THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING, WITHOUT LIMITATION, WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CYNOSURE SHALL NOT BE LIABLE FOR LOST PROFITS OR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES DUE TO ANY CAUSE WHATSOEVER EVEN IF ADVISED AS TO THE POSSIBILITY OF SUCH DAMAGES. THE CUSTOMER AGREES THAT CYNOSURE'S LIABILITY IS SO LIMITED.

This Agreement shall be governed by and construed under the substantive laws of the Commonwealth of Massachusetts. The Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a court in Boston, Massachusetts.

**AUTHORIZED USE**
Use of the Product is permitted only for individuals who are: (i) authorized to treat patients, as defined by the applicable state medical review board in the jurisdiction in which the Product is operated; or, (ii) under the supervision of such licensed physicians.
The Customer is responsible to ensure that all operators have the requisite skill required to use the Products as defined by the applicable state medical review board in the jurisdiction in which the Product is operated. Customer will, at all times, ensure that it and its employees and agents are and remain in full compliance with all federal, state, and local laws and statutes, including without limitation state medical agencies and certification boards, relating to this Agreement or the Product or their use.

The Customer acknowledges that proper operation of the Product requires use of supplies specifically engineered to meet Cynosure's compatibility, quality and performance standards. Accordingly, the Customer Agrees to use only supplies provided by or expressly authorized by Cynosure and never to buy supplies from any other supplier for use with the Product. Customer use of supplies not provided or expressly authorized by Cynosure will void all warranties and extended warranties on the Product.
All future PAC Key purchased by Customer must be used in the purchased Product or other SculpSure laser systems purchased by Customer and may not be transferred to a third party for use in another SculpSure laser system.

Upon completion of training, Customer shall become an authorized provider of Cynosure products and authorized in connection therewith to use the Cynosure trademarks solely in its promotion and delivery of services utilizing Cynosure products, and in accordance with any guidelines provided by Cynosure. However, Cynosure strictly prohibits Customers from purchase and/or use of internet domain(s) consisting of or incorporating any of the Cynosure trademarks. Customer agrees not to purchase and/or use internet domain(s) consisting of or incorporating any of the Customer trademarks. Customer acknowledges Cynosure's exclusive ownership of the Cynosure trademarks and that its use thereof inures solely to Cynosure's benefit. Customer shall not attempt to obtain registration of any Cynosure trademark, and shall not debrand, rebrand or private label any Cynosure product or service.

**TERMINATION OF USE**

Customer acknowledges that its use of the Product (including the Software) is subject to compliance with the usage and other requirements described in this Agreement (including, without limitation, the "Authorized Use" provisions above). Customer's authorization to operate the Product and license to the software will terminate automatically in the event Customer fails to comply with such requirements. In such event, in addition to any other remedies available to Cynosure under applicable law, Customer expressly agrees that Cynosure will have the right to cease selling Products to the Customer, including but not limited to SculpSure Drives, supplies and consumables.

**DATA COLLECTION**
Cynosure reserves the right to collect system usage data from time to time for the purpose of running diagnostics and improving usability and performance of the Product. Data collected will not contain any patient identification information.

Customer hereby acknowledges receipt and understands the contents of Cynosure's Minimum Advertised Pricing Policy. Customer Initials: _____

# CYNOSURE
## MINIMUM ADVERTISED PRICES

*Effective August 1, 2015*

In establishing our policy regarding minimal advertised prices (the "Policy"), Cynosure, Inc. ("Cynosure") seeks to ensure that our customers will devote their fullest efforts to promoting the SculpSure™ Laser System ("SculpSure System") and providing patients excellent service and care using the SculpSure System, while obtaining a fair return on the their investments in the SculpSure System. Cynosure also seeks to ensure that the SculpSure System is maintained as a premium product with a brand image for value and quality.

**Policy Coverage**: Cynosure is adopting this Policy unilaterally. Each customer is free to establish the price it will charge per treatment using the SculpSure System, and failing to charge the minimum advertised price does not place a customer in non-compliance with the Policy. It is entirely within each customer's discretion whether to comply with this policy in making its advertising decisions.

**Minimum Advertised Price ("MAP")**: The MAP per individual PAC (Patented Applicator for Contouring) treatment using the SculpSure System is defined as follows:

- $250 per PAC treatment cycle*

*A PAC treatment cycle is defined as a single, individual applicator use (4 PACs per SculpSure System, $1000 total for 4 PAC's).

If advertising references price, the reference must be prominent and clear to the consumer. For percentage discounts and/or "buy one get one" offers, the advertised price will be calculated assuming a minimum price of $250 per PAC treatment cycle, $1000 for 4 PAC's. If the calculated advertised price falls below MAP policy pricing, it would not be in compliance with this Policy. Cynosure reserves the right to adjust the minimum advertised price per procedure at its discretion. Advertising statements such as "bring a price to us and we will beat it" or "we guarantee the lowest prices anywhere" or similar statements will be deemed not in compliance with the Policy.

The Policy applies to all advertisements of the Sculpture System treatments over the phone or in any advertising forum. Participation in social coupons and discount sites will constitute non-compliance with the Policy.

**Benefits of Compliance with Policy**: If a customer chooses to comply with this Policy, it will receive a 50% discount off the list price of consumables (including PAC Key) that it purchases during the time that it is in Compliance with the Policy. The determination whether a particular

1

customer is in compliance with the Policy is solely Cynosure's to make, and the Policy can be changed without notice. Cynosure will give no weight to any communication regarding the Policy from any customer that Cynosure has determined is not in compliance with the Policy. The discounted individual PAC treatment price is:

| | List Price: | Discounted Price: |
|---|---|---|
| Each Individual PAC Treatment Cycle: | $100.00 per applicator treatment | $50.00 per applicator treatment |

Customers that are not in compliance with the Policy may (i) be denied all or a portion of the discount, (ii) be removed from Cynosure's Physician Locator, and/or (iii) be removed from or deemed ineligible for the Cynosure Rewards Program. Cynosure also reserves the right to stop supplying additional consumables or replacement cards to any customer that is in violation of the Policy.

**Policy Modification**: Cynosure may modify, suspend or discontinue the Policy at any time, or designate promotional periods during which the terms of the Policy change.

**Cynosure Sales Personnel**: CYNOSURE SALES PERSONNEL HAVE NO AUTHORITY TO MODIFY OR GRANT EXCEPTIONS TO THIS POLICY.

## PatientPop Overview

**Elements of the Platform Service**: The Service includes the development of a cloud-based practice website (design owned by PatientPop), and optimization, syndication, and management of local directories and social profiles, practice search engine optimization, 24/7 online scheduling practice calendar, email and SMS appointment reminders, call tracking, custom content (About the Practice and 8 service pages), reputation management, positive review syndication, review monitoring and alerting, analytics dashboard, dedicated Implementation and Customer Success Team.

**Provider Website**: PatientPop will develop a cloud-based practice website for Client which will integrate elements of the Marketing Software. Client is advised that duplicate websites may hurt Search Engine Optimization performance.

**Implementation Process (30 days)**:
- Client schedules and attends the initial project Kick-Off Call
- Client schedules and attends three additional checkpoint meetings to be completed within 30 calendar days
- Client launches PatientPop website within 30 calendar days from the Kick-Off Call

**Required Client Information**:

| | |
|---|---|
| Practice Name | |
| Practice Website Address | |
| Practice Point of Contact Name | |
| Practice Point of Contact Phone Number | |
| Practice Point of Contact Email Address | |

Customer acknowledges that their PatientPop subscription will be paid for by Cynosure for the first 12 months of services. Customer has 30 days to complete implementation before 12 month subscription begins. Customer will be notified 60 days prior to renewal date, at which time customer will be given option to renew PatientPop subscription at the previously negotiated Cynosure rate. Patientpop will evaluate the needs of your practice during your Kickoff Call. Should the previously agreed upon package not fit your needs, your Cynosure package can be used for other PatientPop services.

Provider Signature: _____ Date: 11-14-17

**Required Cynosure Information**:

| Required Information | Quantity | Details |
|---|---|---|
| PatientPop Package Selection | | |
| • $5k Single Provider Platform | X | |
| • $10k Practice Platform | | |
| • $5k Social Media Package | X | |
| Cynosure Sales Rep Name | | |
| Cynosure Marketing Rep Name | | |
| Purchased Cynosure Product | | |

Cynosure Signature: _____ Date: 11-14-17

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

Give Form to the requester. Do not send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOC. INC

**2** Business name/disregarded entity name, if different from above

SAME

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:
- [ ] Individual/sole proprietor or single-member LLC
- [X] C Corporation
- [ ] S Corporation
- [ ] Partnership
- [ ] Trust/estate
- [ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶
- [ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

4501 BIRCH, SUITE B

**6** City, state, and ZIP code

NEWPORT BEACH, CA 92660

Requester's name and address (optional)

**7** List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number: ___ - ___ - ____

or

Employer identification number: 33-0992611

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** Signature of U.S. person ▶ /s/   Date ▶ 11-14-17

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and
4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X   Form **W-9** (Rev. 12-2014)



# Your Application for Financing is Approved

| Finance Agreement | Prepared For | Financing Provided By |
|---|---|---|
| **2262167** | **ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOCIATES, INC.** | **Ascentium Capital LLC** |
| Prepared On November 14, 2017 | 4501 BIRCH ST STE B | 23970 HWY 59 N |
|  | NEWPORT BEACH, CA 92660 | Kingwood TX 77339 |

Enclosed is your Finance agreement. The below instructions will help you complete your documents:

- ✓ Include a copy of your driver's license (all signors).
- ✓ Include a copy of your business check payable to Ascentium Capital LLC for the below invoice amount. Please write your agreement number on the memo line. This check copy will be used to initiate payment via ACH/EFT withdrawal. Do not mail the original check.
- ✓ Return completed cover page and documents by Email to BrandonHodge@AscentiumCapital.com or by Fax to 1-281-570-1552.

## Please Complete Signor Information for JURIS BUNKIS

| Cell Phone: |  | Home Phone: |  |
|---|---|---|---|
| Email: |  |  |  |
| Federal Tax ID: | 33-0992611 |  |  |
| Equipment Location: (Please update if incorrect) | 4501 BIRCH ST STE B, NEWPORT BEACH, CA 92660 Updated address: |  |  |

| INVOICE AMOUNT | INVOICE DETAILS |
|---|---|
| $99.00 | Advanced Payment Amount |
| $359.00 | Processing Fee(s) |
|  |  |
|  |  |
| $0.00 | Less Money Received |
| $458.00 | TOTAL AMOUNT DUE AT SIGNING |

Ascentium Capital greatly appreciates your business. If you have any questions, please contact me.

Joshua Mabee
Phone: 281.902.1467
Email: JoshuaMabee@AscentiumCapital.com.

**ascentium** CAPITAL

Agreement No. 2262167

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| BUYER (together with its successors and assigns, "Buyer", "you" or "your") | ADDRESS |
|---|---|
| ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOCIATES, INC. | 4501 BIRCH ST STE B, NEWPORT BEACH, CA 92660 |

**PAYMENT SCHEDULE:** 6 @ $99.00, 60 @ $5,236.54 (Payments include applicable finance charges.)

**EQUIPMENT:** Items of personal property as generally described herein which Ascentium Capital LLC (together with its successors and assigns, "Seller", "we", "us" or "our") and Buyer agree that a more detailed description of the property agreed to be sold and purchased on the terms and subject to the conditions contained in this Conditional Sale Agreement (this "CSA") shall be maintained by us among our books and records in whatever more detailed description of the property being so sold and purchased is received from the supplier of such property ("Supplier") and, absent manifest error, such detailed description shall be considered incorporated into this CSA and shall be provided to Buyer promptly upon request.

**Equipment Description:** CYNOSURE SCULPSURE LASER W/ ACCESSORIES

**Conditional Sale.** Seller agrees to sell the Equipment to Buyer and Buyer irrevocably agrees to purchase the Equipment from Seller on the terms and subject to the conditions contained in this CSA. Until Buyer has paid us the aggregate amount of all Payments described in the Payment Schedule above (the "Equipment Amount") and any and all other amounts at any time owing under this CSA (together, with the Equipment Amount, the "Total Payment Amount"), title to and ownership of the Equipment shall remain with Seller. Upon payment in full of the Total Payment Amount, title to and ownership of the Equipment shall be automatically transferred from Seller to Buyer "AS IS, WHERE IS" AND WITHOUT REPRESENTATION OR WARRANTY. So long as Buyer is not in breach of its obligations under this CSA, Buyer shall have the right to use the Equipment subject to the terms of this CSA. You agree to pay us: (a) payments shown above, commencing on the billing date specified by us in our sole discretion and continuing on the same day of each month thereafter (each a "Payment", and each day a Payment is due hereunder, a "Payment Date"), and (b) all other amounts that become due under this CSA, including 1/30th of a Payment for each day from and including the date we pay any portion of the purchase price of the Equipment to the Supplier, to but excluding the first Payment Date. You authorize us to adjust the Payment if the final cost of the Equipment or tax is different from that on which such Payment is based. Any amount not paid when due is subject to a late charge of the lower of 10% of such amount or the maximum amount allowed by law.

**Disclaimer of Warranties and Claims.** We make no representation or warranty as to any matter whatsoever including the merchantability or fitness for a particular purpose of the Equipment. This CSA is irrevocable. Your obligation to pay all amounts payable hereunder is absolute and unconditional and will not be subject to any abatement, reduction, setoff, defense, counterclaim, deferment or recoupment for any reason. You acknowledge neither the Supplier nor any other party is our agent, nor are we their agent. You will use the Equipment for commercial purposes only and in compliance with law.

**Equipment.** You will not modify or change location of the Equipment without our prior consent and allow us to inspect it upon our request. At your expense you will maintain the Equipment in good operating condition and repair. We hereby assign to you, so long as you are not in default hereunder, our assignable rights under any contract of ours with the Supplier relating to the Equipment. You should contact the Supplier directly with respect to these rights, if any. You will keep the Equipment free and clear from all liens and encumbrances. Titled Equipment will be titled and/or registered as we direct. Notwithstanding that title to and ownership of the Equipment remains with Seller until the Total Payment Amount has been made in full, you are responsible for any damage or destruction of the Equipment. You will at our election repair the Equipment at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments discounted at 3%. You will indemnify and hold us, our members, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Equipment.

**Fees and Taxes.** You agree to pay when due and to indemnify and hold us harmless from all taxes, interest and penalties relating to this CSA and the Equipment ("Taxes") and reimburse us for those Taxes we pay on your behalf. You agree to pay us documentation fees and all other fees we deem necessary.

**Insurance.** Until the Total Payment Amount has been made in full, you will, at your expense, maintain insurance we specify on the Equipment. Each insurance policy will name us additional insured and loss payee. If you do not provide us satisfactory proof of insurance we may, but

are not required, to buy such insurance for our benefit and add charges which may result in a higher premium you would pay if you obtained insurance, plus an interest charge.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any Payment or other amount under this CSA or any document related hereto when due, (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code, (iii) you breach any other obligation of yours contained in this CSA or any document related thereto, or (iv) any of the above events of default occur with respect to any guarantor. Upon your default, we may do any or all of the following: (a) terminate this CSA, (b) take possession of the Equipment, and for such purpose, enter upon any premises without liability for so doing; you irrevocably waive any security otherwise required of us in the event we take possession of the Equipment; we may require you to deliver it to us at your expense to a location designated by us, (c) declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% per annum as calculated by us, (d) sell, dispose of, hold, use or lease any of the Equipment, (e) exercise any other right or remedy which may be available to us under applicable law. The selection of one remedy does not preclude the exercise of any other remedy. You shall reimburse us for all costs we incur in enforcing our rights including our attorneys' fees and costs of repossession, repair, storage and remarketing of the Equipment. A waiver of default will not be a waiver of any other or subsequent default.

**General.** This CSA shall be governed and construed under the laws of the State of California without reference to its principles of conflicts of laws. You consent to the non-exclusive jurisdiction of courts located in California in any action relating to this CSA. You waive any objection based on improper venue and/or forum non conviens and waive any right to a jury trial. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. The parties agree that each Payment includes a finance charge. You hereby grant to us a security interest in the Equipment and all proceeds to secure all of your obligations under this CSA. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this CSA, or permit the Equipment to be used by anyone other than you until the Total Payment Amount has been made in full. We may assign this CSA, in whole or in part, without notice to you or your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. This CSA sets forth the entire understanding of the parties with respect to its subject matter and may only be amended in writing signed by both parties. You represent and warrant to us that all information conveyed to us in connection with this CSA and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This CSA may be executed in separate counterparts which together shall be the same instrument. You agree this CSA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not prepay this CSA without our prior written consent. If Buyer constitutes more than one person, the liability of each shall be joint and several. A copy of this CSA (whether delivered by facsimile or otherwise) shall be deemed an original for all purposes. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Buyer at its address set forth above or to Seller at 23970 HWY 59 N, Kingwood, TX 77339-1535, or such other address given to the sender by written notice.

By signing below Buyer hereby irrevocably accepts the Equipment covered by this CSA and irrevocably authorizes Seller to pay the Supplier for the Equipment. The person executing this CSA is authorized to do so, making this CSA the valid and binding act of the Buyer.

| Buyer Name: | ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOCIATES, INC. | Accepted By: | Ascentium Capital LLC |
|---|---|---|---|
| By: | [signature] | By: | |
| Printed Name and Title: | JURIS BUNKIS President | Printed Name and Title: | Bryan Wheeler, Senior Vice President |

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the prompt payment and performance when due of all of the obligations of the Buyer under this CSA and all related documents executed by the Buyer (collectively, the "Agreements"). We may proceed against you before proceeding against the Buyer, the Equipment or enforce any other remedy. Notwithstanding any changes made to the Agreements in our dealings with Buyer, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Buyer. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law and venue provisions of the CSA shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically updating it and sharing the results with others.

| Guarantor Signature: | [signature] | Printed Name: | JURIS BUNKIS |
|---|---|---|---|
| Guarantor Signature: | | Printed Name: | |

**AUTHORIZATION FOR ACH PAYMENTS:** Buyer authorizes Seller or Seller's successors and assigns to automatically initiate and make debit entry charges to Buyer's bank account indicated below for the payment of all amounts owed by you from time to time under the CSA. This Authorization is to remain in effect until payment of the entire Total Payment Amount, and Debtor acknowledges that a revocation of this authority shall be an event of default under the . Any incorrect charge will be corrected upon notification to us by either a credit or debit to Buyer's account.

| Bank Name: | | Acct Holder Name: | |
|---|---|---|---|
| Account No: | | ABA No: | |
| Authorized Signature: | [signature] | Printed Name and Title: | |

2421-20160613



**PREPAYMENT ADDENDUM**

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2262167**

This Prepayment Addendum ("Addendum") supplements and amends that certain equipment finance agreement, lease, rental, installment payment, conditional sale or similar agreement identified by the Ascentium agreement number set forth above ("Agreement") between Ascentium Capital LLC ("Ascentium") and ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOCIATES, INC. and pertaining to the property described in the Agreement. The following is hereby added as a new section to the Agreement:

"**Prepayment**: Notwithstanding any other provision of this Agreement, you may prepay this Agreement, in whole but not in part, at any time after the one year anniversary of the due date of the first payment of monthly rent, debt service or purchase price installment, as applicable, due under this Agreement and so long as the first twelve Payments have been made as specified herein and no default has occurred and is continuing under the terms of this Agreement, by paying Ascentium the "Unpaid Principal Balance". Ascentium shall specify the Unpaid Principal Balance which, absent manifest error, shall be binding and conclusive. No prepayment penalty shall be added to the Unpaid Principal Balance."

You agree that a facsimile or other copy of this Addendum, as executed, shall be deemed the equivalent of an originally executed copy for all purposes, and except as amended by this Addendum, the Agreement remains in full force and effect.

ORANGE COUNTY PLASTIC SURGERY MEDICAL ASSOCIATES, INC.
Signature: _____
Printed Name: JURIS BUNKIS
Title: President

2301-20160913